IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| POLYBRITE INTERNATIONAL, INC., an Illinois corporation, | ) ) ) |
| Plaintiff, | ) 06 C 3959 ) ) Judge Ronald A. Guzmán ) |
| WESTINGHOUSE LIGHTING CORP. a Pennsylvania corporation, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff PolyBrite International, Inc. ("PolyBrite") has sued defendant Westinghouse Lighting Corporation ("WLC") for breach of a non-competition agreement and seeks injunctive and other relief. In response, defendant has moved to compel arbitration and stay the case pending arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3-4, or, in the alternative, to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth in this opinion, the Court denies defendant's motion.

### Facts

WLC is in the business of distributing light bulbs and lighting products under various Westinghouse trademarks to retail, wholesale, and other types of customers. (Pl.'s Resp. Opp'n 2.) Westinghouse Electric Corporation granted WLC an exclusive license to sell Westinghouse branded light bulbs and other lighting utilizing light-emitting diode ("LED") technologies in several countries. (Def.'s Mot. Dismiss/Compel Arbitration/Stay ("Def.'s Mot. Dismiss"), Ex. B, Agency Agreement 1.) WLC subsequently granted ABCO Licensing, LLC ("ABCO") "rights to sell certain types of Westinghouse branded light bulbs." (Id.) On October 17, 2003, PolyBrite

and ABCO entered into an agency agreement ("Agency Agreement") whereby ABCO gave PolyBrite exclusive rights to manufacture, market, sell and distribute "all LED type of light products other than general illumination bulbs (which are the subject of an exclusive distribution agreement dated August 12, 2003 between WLC and [PolyBrite])" bearing certain Westinghouse trademarks in the Americas and Europe. (*Id.* at 1, 16; Pl.'s Resp. Opp'n 2.) The Agency Agreement contains an arbitration clause that states in pertinent part:

> (a) Any controversy or claim arising out of or relating to this Agreement, whether in regard to the existence, validity, breach or of termination hereof, whether during or after its term, will be finally settled by compulsory arbitration in Philadelphia, Pennsylvania in the English language under rules and auspices of the American Arbitration Association. . . .
>
> (b) To initiate arbitration, either party may serve Notice of Intent to Arbitrate on the other party in writing. . . .

(Def.'s Mot. Dismiss, Ex. B, Agency Agreement ¶ 13.)

On November 9, 2003, PolyBrite and WLC entered into a non-competition agreement ("Non-Competition Agreement"). (*Id.*, Ex. A, Non-Competition Agreement; Def.'s Mem. Law Supp. Mot. Dismiss/Compel Arbitration/Stay ("Def.'s Mem. Supp.") ¶ 6.) PolyBrite has sued WLC for breach of the Non-Competition Agreement. (Compl. ¶ 1.)

## Discussion

WLC has moved to compel arbitration and stay the action pending arbitration and argues that although WLC is a non-signatory to the Agency Agreement containing the mandatory arbitration clause, it may invoke the arbitration provision because the Agency Agreement is incorporated into the Non-Competition Agreement. Alternatively, WLC moves to dismiss the

2

complaint for failure to state a claim because the Non-Competition Agreement lacks consideration.

### I. Whether WLC May Compel Arbitration When It Is a Non-signatory to the Agreement Containing the Arbitration Clause

Under the Federal Arbitration Act, arbitration may be compelled if there is "a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (citing 9 U.S.C. § 4; *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909-10 (7th Cir. 1999)).[1] "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998). However, "[a]rbitration is contractual by nature—a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Zurich Am. Ins. Co.*, 417 F.3d at 687 (quotations omitted); *see Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995) ("Arbitration under the [Federal Arbitration] Act is a matter of consent, not coercion . . . .").

WLC argues that it may compel PolyBrite to arbitrate the claims in this lawsuit because even though the Non-Competition Agreement between WLC and PolyBrite does not contain an arbitration clause, the Non-Competition Agreement stemmed from the Agency Agreement between PolyBrite and ABCO in which PolyBrite agreed to arbitrate all claims arising out of the Agency Agreement. "There are five doctrines through which a non-signatory can be bound

---

[1] The parties agree that Illinois law applies to this issue. (Def.'s Mem. Supp. 5-8; Pl.'s Resp. Opp'n 8-11.)

3

by arbitration agreements entered into by others: (1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference." *Zurich Am. Ins. Co.*, 417 F.3d at 687.

Because WLC and PolyBrite focus solely on the incorporation by reference doctrine, so shall this Court. "Generally, one instrument may incorporate another instrument by reference," but "[t]he contract must show an intent to incorporate the other document and make it part of the contract itself." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 664 (7th Cir. 2002) (quotations omitted). "When determining under Illinois law whether something is incorporated into a contract, we limit our inquiry to the four corners of the contract." *Atl. Mut. Ins. Co. v. Metron Eng'g & Constr. Co.*, 83 F.3d 897, 901 (7th Cir. 1996). "Preliminary recitals of an agreement do not become binding obligations unless so referred to in the operative portion of the instrument as to show a design they should form a part of it." *Ill. Hous. Dev. Auth. v. M-Z Const. Corp.*, 441 N.E.2d 1179, 1189 (Ill. App. Ct. 1982).

WLC argues that the rights of PolyBrite to use the Westinghouse trademarks and the limitations on those rights are contained only in the Agency Agreement—to which WLC is a non-signatory—and thus the Non-Competition Agreement should also incorporate the arbitration clause of the Agency Agreement. (Def.'s Mem. Supp. 7-8; Def.'s Mot. Dismiss ¶ 15.) While language contained in the Non-Competition Agreement refers to the Agency Agreement, these references do not conclusively demonstrate that WLC and PolyBrite intended to incorporate the entire Agency Agreement into the Non-Competition Agreement. The Non-Competition Agreement references the Agency Agreement in its preamble in the following manner:

> Whereas, on or about the date of this agreement POLYBRITE has entered into a separate agreement under which it has acquired certain rights, as a licensee,

4

> to use certain Marks thereon which contain the name Westinghouse on some of its products, and
>
> Whereas the parties agree that they mutually desire that, as to the specific POLYBRITE products identified therein, they do not want WLC to be marketing and selling identical or similar products, and
>
> Therefore, in consideration of the agreements and covenants in that agreement and in this agreement, and intending to be legally bound hereby, the parties agree as follows:

(Def.'s Mot. Dismiss, Ex. A., Non-Competition Agreement.) Further, the Non-Competition Agreement provides the following:

> WLC agrees that in addition to any other limitation, for the term of any POLYBRITE agreement under which it has received a license of the Mark or name Westinghouse and for a period of one year after the termination of any such agreement, WLC will not directly or indirectly engage in, or in any manner be connected with any person, firm or corporation in competition with the POLYBRITE products described in and/or approved under said licensing agreement or with any persons, company or group of companies engaged in providing products substantially similar to the Products described in that licensing agreement.

(*Id.*)

Because WLC is not a party to the Agency Agreement, there is no unambiguous or express evidence of an intent or design to incorporate the Agency Agreement in its entirety into the Non-Competition Agreement. These references manifest an intent to limit the Non-Competition Agreement to PolyBrite's products that are subject to the Agency Agreement.

However, "[m]ere reference to another contact or document is not sufficient to incorporate its terms into a contract. There must be an express intent to incorporate." *Rosenblum*, 299 F.3d at 666 (holding arbitration provision was not incorporated despite the fact that two contracts were executed on the same day, referenced one another, and one agreement was a condition precedent to the other agreement because the contracts were silent on incorporation); *see also Grundstad v. Ritt*, 106 F.3d 201, 205 (7th Cir. 1997) (holding a

5

guarantor of a party to a non-compete agreement was not bound to the agreement's arbitration clause because the guarantor did not unambiguously express an intent to be bound).

Moreover, allowing WLC to invoke the arbitration clause contained in PolyBrite and ABCO's Agency Agreement would expand the scope of that clause beyond its express terms. The arbitration provision in the Agency Agreement provides: "To initiate arbitration, *either party* may serve Notice of Intent to Arbitrate on the *other party* in writing." (Def.'s Mot. Dismiss, Ex. B., Agency Agreement ¶ 13(b) (emphasis added).) The parties to the Agency Agreement are ABCO and PolyBrite and they are the only signatories to the Agreement. (*See id.*)

Even if references in the Non-Competition Agreement reflect an intent to integrate certain terms or the scope of the rights of PolyBrite from the Agency Agreement, "[a] dispute that arises under one agreement may be litigated notwithstanding a mandatory arbitration clause in a second agreement, even where the two agreements are closely intertwined." *Indus. Elec. Corp. of Wis. v. iPower Distrib. Group, Inc.*, 215 F.3d 677, 681 (7th Cir. 2000). Even if the Non-Competition Agreement is closely intertwined with the Agency Agreement, PolyBrite may litigate its claims against WLC regardless of the mandatory arbitration clause in the Agency Agreement between PolyBrite and ABCO. Therefore, the Court rejects WLC's arguments that it may compel arbitration of PolyBrite's claim by invoking the arbitration clause contained in PolyBrite and ABCO's Agency Agreement.

## II. Whether the Non-Competition Agreement Lacks Sufficient Consideration.

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). "[A]ll the

6

plaintiff's well-pleaded factual allegations and the inferences reasonably drawn from them" are accepted as true. *Id.* at 1520-21 (quotation omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

WLC argues that the Non-Competition Agreement contains only a promise by WLC not to compete with certain PolyBrite products. (Def.'s Mot. Dismiss 2.) WLC argues that the Non-Competition Agreement is not valid and enforceable under Illinois law[2] because PolyBrite's purported consideration is contained in another agreement—the Agency Agreement to which WLC is not a party—which had already taken full effect prior to the execution of the Non-Competition Agreement. (*Id.* 2-3.)

"[C]onsideration consists of some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other." *Lipkin v. Koren*, 64 N.E.2d 890, 893 (Ill. 1946). "[W]hen there is an existing contractual obligation, a promise to continue performing that legal obligation lacks consideration." *Boomer v. AT&T Corp.*, 309 F.3d 404, 416 (7th Cir. 2002). Additionally, "if the alleged consideration for a promise has been conferred prior to the promise upon which alleged agreement is based, there is no valid contract." *Johnson v. Johnson*, 614 N.E.2d 348, 355 (Ill. App. Ct. 1993). However, "[w]here two instruments are executed as part of the same transaction, the benefit accruing to one of the parties in one instrument may be the

---

[2] The parties also agree that Illinois law applies to the consideration issue. (Def.'s Mot. Dismiss ¶ 9-10; Def.'s Mem. Supp. 4; Pl.'s Resp. Opp'n 4.)

7

consideration for the promise of such party in the other." 12 Illinois Law and Practice *Contracts* § 74.

PolyBrite argues that it has provided valid consideration for the Non-Competition Agreement and that the past consideration rule does not apply here because no bargain is lacking. PolyBrite argues that valid consideration for the Non-Competition Agreement was provided by way of the benefits of increased recognition, goodwill, and penetration of the previously untapped LED lighting market accruing to WLC through PolyBrite's efforts to manufacture, promote, and sell certain lighting products under the Westinghouse Marks licensed to PolyBrite in the Agency Agreement.

WLC does derive a benefit from the Agency Agreement in that PolyBrite agreed to "indemnify and hold . . . WLC . . . their affiliates, as well as their respective officers, directors, agents, employees, successors and assigns, harmless from and against all claims." (Def.'s Mot. Dismiss, Ex. B, Agency Agreement ¶ 9(b).[3]) PolyBrite states in its Response that the Non-Competition Agreement was being negotiated at virtually the same time as the Agency Agreement—which were both executed within three and one-half weeks of one another—and "ultimately both contracts memorialized the bargaining of the parties." (Pl.'s

---

[3]The indemnification clause states in pertinent part:
> [PolyBrite] shall indemnify and hold ABCO[], WLC, WEC [and] their affiliates, as well as their respective officers, directors, agents, employees, successors and assigns, harmless from and against any and all claims, suits, damages, liabilities, property damage, injury, costs and expenses . . . arising out of, based on or in any other manner related to; (i) the breach of any representation, warranty, covenant or obligation of [PolyBrite] under this Agreement; (ii) any use by [PolyBrite] of the Marks which is not permitted by or not in accordance with the terms of this Agreement or the WEC License; (iii) any defect or alleged defect in the products . . .

(Def.'s Mot. Dismiss, Ex. B., Agency Agreement ¶ 9(b).)

8

Resp. Opp'n 6.) If PolyBrite can establish that the Agency Agreement between PolyBrite and ABCO and the Non-Competition Agreement between PolyBrite and WLC were executed as part of the same transaction, then the benefit accruing to WLC in the Agency Agreement may be valid consideration for WLC's promise in the Non-Competition Agreement. *See* 12 Illinois Law and Practice *Contracts* § 74. Thus, WLC's obligation under the Non-Competition Agreement may not be a mere gift supported by past consideration, and PolyBrite may be able to establish its entitlement to relief consistent with the allegations in its complaint.

Additionally, PolyBrite argues that the past consideration rule by definition applies only where a bargain is lacking and, thus, it should not apply here. "[U]nder general contract principles a bargained-for exchange exists if one party's promise induces the other party's promise or performance." *Boomer*, 309 F.3d at 416. Furthermore, there are exceptions to the general past consideration rule, including when "the consideration was rendered at the request of the promisor." *Worner Agency, Inc. v. Doyle*, 479 N.E.2d 468, 473 (Ill. App. Ct. 1985).

If PolyBrite can establish its claim that the Agency Agreement and the Non-Competition Agreement were negotiated at the same time in order to memorialize the bargaining of the parties, then PolyBrite's promise to indemnify WLC in the Agency Agreement may have been induced by or rendered at the request of WLC. Accordingly, dismissal of PolyBrite's breach of contract claim at this point in the litigation is inappropriate because a more developed factual record consistent with PolyBrite's allegations could establish that PolyBrite provided valid consideration to WLC. If the Non-Competition

9

Agreement was valid, then PolyBrite may be entitled to relief if the Agreement was subsequently breached by WLC. Therefore, the Court denies WLC's motion to dismiss.

## Conclusion

For the foregoing reasons, the Court denies defendant WLC's Motion to Compel Arbitration and Stay Proceedings Pending the Outcome of Pending Arbitration or, in the alternative, its Motion to Dismiss for Failure to State a Cause of Action Upon Which Relief Can Be Granted [doc. nos. 13-1 and 13-2].

**SO ORDERED**  ENTERED: 3/5/07

_____
HON. RONALD A. GUZMAN
**United States Judge**